UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE


POLYLOK, INC., et al.                                                                                    PLAINTIFFS


v.                                                                               CIVIL ACTION NO. 3:12CV-535-S


BEAR ONSITE, LLC, et al.                                                                          DEFENDANTS


## MEMORANDUM OPINION AND ORDER

This matter is before the court on motion of the defendant, Bear Onsite, LLC, ("Bear") for summary judgment as to Count I of the Amended Complaint which alleges that Bear's ML3-916 effluent filter ("ML3 filter") and BO-VRS Vertical Reed Switch alarm ("vertical reed switch" and "alarm" or collectively "VRS/alarm") infringe plaintiff Polylok, Inc.'s U.S. Patent No. 6,129, 837 ("the '837 patent") entitled "Waste Water Treatment Filter Including Waste Water Level Control Alert Device."  DN 67, p. 5, ¶¶ 25, 26, 28.


I. Factual Background

The Amended Complaint alleges the following facts:

Almost thirty years ago, Polylock entered the business of precast, drainage and waste water products, including waste water filters and water level control devices.  On October 10, 2000, the United States Patent and Trademark Office ("USPTO") issued the '837 patent.  On April 17, 2006,

through an assignment, the Peter W. Gavin Spray Trust became owner of all right, title and interest in and to the '837 patent.[1]

Through an asset purchase agreement, Polylok purchased the assets of Bluegrass Environmental Septic Technology, LLC ("BEST"), a high-quality effluent septic filter business. In connection with the purchase, the members of BEST agreed not to compete in the manufacture or sale of effluent septic filters for a period of five years following the sale of the company to Polylok.

Additionally, Michael Jay Hornback, president of BEST and Promold & Tool, LLC, entered into a consulting agreement in which Promold agreed to assist and consult with Polylok concerning the effluent septic filer being purchased from BEST, and agreed not to compete in the effluent septic filter market with Polylok. Despite Hornback's agreement not to compete, Hornback's companies continue to manufacture effluent septic filters for Bear.

Poylok filed suit against Bear, Hornback, Promold and Premier on the foregoing allegations, and alleged patent infringement by Bear (Count I), inducement of and contributing to patent infringement by Promold and Premier (Count II), breach of contract by Hornback (Count III), unjust enrichment by Hornback, Promold and Premier (Count IV), and common law unfair competition by Hornback, Promold and Premier (Count V).

---

[1] The plaintiffs are referred to herein collectively as "Polylok."

II. Analysis

Bear seeks summary judgment as to Count I for patent infringement on the ground that Bear's products do not infringe Claim 1[2] of the '837 patent because:

(1) Bear's ML3 filter does not include a vertical reed switch and alarm in an "unfiltered waste water side" of the filter device as required by Claim 1 of the '837 patent;[3] and

(2) The ML3 filter does not "combin[e] a filter device with a high level alert device" as required by Claim 1 of the '837 patent.[4]

A.

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes

---

[2] Allegations of infringement of Claim 4 of the '837 patent have apparently been abandoned by the plaintiff. *See*, DN 111, p. 7, Ex. C.

[3] DN 81, pp. 9-12.

[4] *Id.*, pp. 12-14.

it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

B.

Polylok contends that Bear's ML3 filter and VRS/alarm together literally infringes the '837 patent or, alternatively, infringes under the doctrine of equivalents. Polylok urges that Bear sells its filter and the VRS/alarm which Bear instructs to combine, and which combination literally infringes the '837 patent. Bear responds that the filter and VRS/alarm are packaged and sold separately and that the ML3 filter is capable of functioning properly without a vertical reed switch or alarm device.

1.

Taking the evidence in the light most favorable to Polylok, a genuine issue of material fact exists concerning whether Bear manufactures, markets or sells its ML3 filter in combination with a VRS/alarm. The fact that the components are packaged and sold separately or that the filter could function without a reed switch and alarm has not been shown to prevent a finding that Bear, in fact, sells its filters in combination with such alert devices. Bear has not shown entitlement to summary judgment on the facts.

Bear states in its sales literature that

The average homeowner doesn't want to take the time to understand how onsite septic systems are designed to work. Yet, they have an expectation that it WILL

> work, with a minimal amount of maintenance, service and expense. With this in mind, Bear Onsite's ML3 filter includes an alarm feature unlike any other in the marketplace. The housing for a Vertical Reed Switch is molded internally within the filter, protected from unfiltered effluent that could trigger false alarms. Therefore, when the alarm is triggered within a Bear Onsite ML3 filter, the homeowner can be assured there is truly a need for a service call.

DN 87-2, Ex. 12.

Bear's brochure also contains a diagram depicting a septic system including a septic tank outfitted with an ML3 filter in combination with a VRS switch and a connection running underground to an alarm in the home which is advertised as "Onsite System Protected by LM3-916 Effluent Filter and BO-A-O-VRS Alarm." Bear's motion for summary judgment on this ground will be denied.

2.

Bear's next argument relates to part (a) of Claim 1 which describes:

> mounting means for mounting said high level alert device to said filter device in an unfiltered waste water side of said filter device, said mounting means being integral with said filter device...

Bear contends that its filter and alarm system does not infringe the '837 patent because the ML3 "mounting means" is located between the first and second weirs of its filter.[5] Bear describes its "mounting means" as "an opening in the filter cartridge for the ML3-916 filter which may be used to mount a vertical reed switch in the filter cartridge. " Bear suggests that its mounting means

---

[5]DN 81-1, p. 10.

is located "beyond the entry face of the filter cartridge,"[6] in a filtered, rather than unfiltered portion of the filter,[7] and therefore its device does not infringe the '837 patent.

Bear has reduced the issue to the construction of the term "unfiltered" in Claim 1 of the '837 patent. Bear contends that "unfiltered" means an absence of all filtering. Polylok argues that "unfiltered" means not having gone through the filtering process.

If Polylok's construction of the term is correct, the location of the ML3 mounting means is within the "unfiltered waste water side" of the filter, as described in the '837 patent. Polylok urges, however, that Bear's construction of the term is without effect, as the "location of the mounting means [and VRS/alarm] has no meaningful connection to their physical structure,"[8] and therefore does not constitute a limitation on the claimed device. We address this second point first.

(a)

Bear contends that "in an unfiltered waste water side of said filter device" recites a limitation, as it appears in a means-plus-function clause. It argues that the term "mounting means for mounting said high level alert device to said filter device in an unfiltered waste water side of said filter device" contains a means for performing a stated function. Bear is in error, as the structure of the mounting means is described in Claim 1, part (c).[9] As Claim 1 provides the structure of the mounting means, Claim 1, part (a) does not include a § 112, ¶6 means-plus-function limitation. *Flo*

---

[6]DN 81-1, p. 10.

[7]*Id.*

[8]DN 87, p. 7.

[9]DN 81-2, p. 8.

*Healthcare Solutions, LLC v. Kappos*, 697 F.3d 1367, 1373 (Fed.Cir. 2012). As explained by the Federal Circuit in *Flo Healthcare*,

> Our cases have established two guidelines for determining whether the special rules of claim construction se forth in § 112, ¶ 6 apply to a given claim limitation. The guidelines are straightforward: use of the word "means" creates a rebuttable presumption that the drafter intended to invoke § 112, ¶ 6, while failure to use the word "means" creates a rebuttable presumption that the drafter did not intend the claims to be governed by § 112, ¶ 6. *See Personalized Media Comm'ns LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 703-04 (Fed.Cir. 1998). In rebutting the presumption, when a claim recites a function "but them goes on to elaborate sufficient structure, material, or acts within the claim itself to perform entirely the recited function, the claim is not in a means-plus-function format even if the claim uses the term means." *Id.* at 704 (quoting *Sage Prods. v. Devon Indus., Inc.*, 126 F.3d 1420, 1427-28 (Fed.Cir. 1997)(internal quotes omitted)).

697 F.3d at 1373.

Polylok correctly states that an apparatus claim, which Claim 1 clearly is, "covers what a device is, not what a device does." *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1468 (Fed.Cir. 1990). The language "in an unfiltered waste water side of said filter device" does not recite a structural feature of the device, or step necessary to define the invention, and therefore is not limiting. *Intirtool, Ltd. v. Texar Corp.*, 369 F.3d 1289, 1295 (Fed.Cir. 2004). Bear's attempt to distinguish the ML3 filter and VRS/alarm from the '837 patent on the basis of location of the mounting means is without merit.

(b)

Even if Claim 1 of the '837 patent was found to contain a limitation addressing the location of the mounting means, we would still deny Bear's motion for summary judgment. Bear has not met

its burden to show that no genuine issue of material fact exists with respect to the proper construction of the term "unfiltered."

Bear insists that finding the proper construction is as simple as equating the prefix "un-" with "not." While dictionary definitions and "plain meanings" provide significant guideposts, plain meanings cannot be given to terms wholly out of context of the patent claims in which the terms appear. One skilled in the art must find this "plain meaning," rather than one skilled only in common parlance. There is such a thing as oversimplifying an argument. That is what, in this court's view, Bear has done here.

The terms in issue appear in a patent for a "Waste Water Treatment Filter Including a Waste Water Level Control Alert Device"[10] disposed in a waste water treatment tank.[11] Thus it must be understood by a person of ordinary skill in the art of waste water filtration at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313-14 (Fed.Cir. 2005). The term must also be interpreted in light of the patent's claims and specification. Where a term may be given proper construction from within the patent itself, the court must do so. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir. 1996); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed.Cir. 1995), *aff'd*, 517 U.S. 370 (1996); *Phillips, supra.*

Bear and Polylok present differing constructions of the phrase "in an unfiltered waste water side of said filter device."[12] Bear urges the court to construe "unfiltered" as the absence of all

---

[10]The '837 patent, DN 81-2.

[11]DN 81-2, p. 8, Claim 1.

[12]The parties have now filed their claim construction briefs. It is this court's understanding that this motion takes a more facial approach, suggesting that the plaint meaning of key terms eliminates the need for any further claim construction. The court concludes, however, that further information concerning the understanding of a person of ordinary skill in the art of waste water

(continued...)

filtering. Thus, it concludes that the only point at which waste water exists "unfiltered" in the tank is prior to its entry into the filter device by giving a plain meaning to the prefix "un–." Bear urges that "partially filtered" waste water is still "filtered" waste water and thus distinguishable from the "unfiltered" waste water referred to in Claim 1.

Polylok contends, on the other hand, that Claim 1 of the patent refers to an "unfiltered waste water side of said filter device" which is a side of the filter where filtration has not been completed. This construction, it urges, becomes apparent in light of the specification which describes filtered liquids being emitted from the tank through an outlet: "Waste water to be filtered is admitted to the tank through an inlet and a level of the waste water is maintained in the filter housing with filtered liquid being emitted from the tank through an outlet." DN 81-2, p. 7. Polylok opines that a person of ordinary skill in the art of waste water filtration would read "an unfiltered waste water side of the filter" as other than where filtered liquid is emitted from the tank at the end of the filtration process.

III. Conclusion

Based upon the foregoing, Bear's argument that "unfiltered" waste water is "filtered" waste water when it has had some particulate matter removed; that is, "partially filtered, is open to debate on the current record. In any event, the court has concluded that "an unfiltered waste water side of said filter device" does not state a limitation in Claim 1 of the '837 patent.

Bear has failed to meet its burden to establish that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Summary judgment will therefore be denied.

---

[12](...continued)
filtration.

Motion having been made and for the reasons stated herein and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that

1. The motion of the plaintiffs, Polylok, Inc., *et al.*, for leave to file a sur-reply brief (DN 103) is **GRANTED**.

2. The motion of the defendant, Bear Onsite, LLC, for summary judgment as to Count I (DN 81) is **DENIED.**

**IT IS SO ORDERED.**

September 30, 2014

**Charles R. Simpson III, Senior Judge
United States District Court**