UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:12-CV-00535-DJH-CHL

Polylok, Inc. and Peter Gavin
and Michael N. Delgass, as
Trustees of The Peter Gavin
Spray Trust,                                                              Plaintiffs,

v.

Bear Onsite, LLC, Promold &
Tool, LLC, Michael Jay
Hornback, and Premier
Promold & Tool, Inc.,                                                     Defendants.

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion to Compel ("Motion to Compel") (DN 210) discovery

responses and for sanctions filed by Plaintiffs Polylok, Inc. and Peter Gavin and Michael N.

Delgass as Trustees of The Peter Gavin Spray Trust ("Plaintiffs").  Defendants Michael Jay

Hornback ("Hornback"), Promold & Tool, LLC ("Promold"), and Premier Promold & Tool, Inc.

("Premiere") (collectively known as "the Hornback Defendants") filed a response (DN 216), and

Plaintiffs have filed a reply (DN 221).  Therefore, this matter is ripe for review.

## I.      BACKGROUND

At issue in this dispute are three different categories of documents:  (1) the Hornback

Defendants' responses to document requests concerning the Lifetime branded filter ("Lifetime

Requests"); (2) certain tax returns of the Hornback Defendants; and (3) redacted communications

provided by the Hornback Defendants.

### A.      Lifetime Requests

As an initial matter, the Court will address some deficiencies with respect to the Motion

to Compel.  On December 23, 2015, Plaintiffs served Hornback with its "Amended First Set of

1

Requests to Defendant Michael J. Hornback" ("Amended First Set of Requests"), which consisted of fifty (50) separate document requests.  (DN 210-9.)  The document requests concerning the Lifetime branded filter ("Lifetime Requests") are at issue here.  (DN 221, p. 2.) Plaintiffs have not identified which of the fifty requests constitute the Lifetime Requests.  It does not appear to be a point of contention between the parties, however.  Therefore, the Court will address that category as a whole.  Additionally, Plaintiffs state that the *Hornback Defendants* have provided no responses to the December 23, 2015 requests for production even though the requests for production attached to the Motion to Compel appear to be directed toward Hornback *individually*.  (*See* DN 210-9 ["Amended First Set of Requests to Defendant Michael J. Hornback"].)  While it is possible that the Amended First Set of Requests served on Hornback are duplicative of requests sent to the other Hornback Defendants, that is not clearly stated. Regardless, it appears that both parties agree that all of the requests at issue apply equally to all of the Hornback Defendants; therefore, the Court will do the same.

On January 21, 2016, the undersigned stayed discovery pending a ruling on Plaintiffs' motion for leave to file a third amended complaint (DN 170); on March 4, 2016, the undersigned clarified its January 21, 2016 order, stating that the parties shall respond to "existing and outstanding written discovery," but that all other discovery was stayed and shall commence seven days after a ruling on the motion for leave to file a third amended complaint.  (*See* DNs 178 [order staying discovery]; 186 [order clarifying DN 178].)  Because the Lifetime Requests were served on December 23, 2015, one could construe the March 4, 2016 order as ordering the Hornback Defendants to respond by January 22, 2016 (*i.e.*, within thirty days) because they were "existing and outstanding written discovery."   Plaintiffs have not done so, however.  Rather, Plaintiffs state that the undersigned's March 4, 2016 order "clarified that the January 21 Order

staying discovery did not apply to preexisting written discovery unrelated to the proposed Lifetime claims . . . ."  (DN 210-, p. 7.) In other words, Plaintiffs agree that the Lifetime Requests were subject to a discovery stay as they were related to the newly proposed additional claims; the Hornback Defendants do not disagree with this characterization.[1]  Consequently, when District Judge David J. Hale granted the motion for leave to file a third amended complaint (*see* DN 190) on April 22, 2016, according to the undersigned's March 4, 2016 order, discovery commenced seven days later on April 29, 2016.  Thus, according to Plaintiffs, responses to the Lifetime Requests were due, at the very latest, thirty days later on May 30, 2016.[2]  The undersigned will accept this deadline because, regardless of parties' interpretation of the Court's March 4, 2016 order, Plaintiffs appear to be giving the Hornback Defendants the longest deadline conceivable under the March 4, 2016 order.

On June 24, 2016, the parties participated in a telephonic status conference with the undersigned.  (DN 206.)  Plaintiffs assert that during this conference, counsel for the Hornback Defendants stated that his clients would not produce documents in response to the Lifetime Requests and as a result, directly induced Plaintiffs to file this motion to compel.  (DN 221, p. 4.)  The undersigned set a deadline of July 1, 2016 for Plaintiffs to file a motion to compel.  (DN 206.)  On June 29, 2016, two days before the deadline for Plaintiffs to file a motion to compel, the Hornback Defendants sent Plaintiffs a letter via email stating that they would be mailing Plaintiffs a "disc containing . . . documents . . . regarding the Lifetime Filter."  (DN 210-7, p.2.)  The next day, June 30, 2016, Plaintiffs had not received the disc and filed the Motion to Compel.

---

[1] The undersigned recognizes that its March 4, 2016 order contains a discussion regarding plaintiffs' desire to continue discovery with respect to existing claims and to stay discovery with respect to their newly proposed additional claims, *i.e.*, discovery with respect to the Lifetime filter.  However, the actual words of the order state, "[T]he parties shall respond to existing and outstanding written discovery."  (DN 186, p. 2.)

[2] Thirty days later is actually May 29, 2016, which was a Sunday.

(DN 221, p. 4.)  Plaintiffs received the disc containing the production of the Lifetime Filter documents on July 1, 2016.  (*Id.*)

B.    **Tax Returns**

Plaintiffs argue that the *Hornback Defendants*' responses to the "Amended First Set of Requests" requesting tax returns from 2000 to the present are deficient.  (*See* DN 210-9, p. 6 ["For each year, beginning October 10, 2000, all documents concerning your tax returns."].) Again, although the attached Amended First Set of Requests were directed to Hornback individually, both parties appear to agree that the requests for tax returns from 2000-present apply equally to all of the Hornback Defendants; therefore, the Court will do the same.

The Hornback Defendants produced tax returns for 2012-2014 on April 7, 2016 and apparently had already produced tax returns from 2007-2012 via former counsel.  (*See* DN 210-1, p. 8; DN 216, p. 3; DN 221, p. 6.)  Therefore, the tax returns at issue date from 2000 to 2006.

C.    **Redacted Communications**

Plaintiffs do not specifically identify in the brief supporting the Motion to Compel what redacted communications are at issue.  However, in correspondence dated April 27, 2016, Plaintiffs state that the Hornback Defendants have produced redacted communications between Hornback and Theo Terry without a privilege log.  (DN 210-5, p. 2.)  The Court presumes the redacted communications were produced by the Hornback Defendants in response to the Amended First Set of Requests, but that is not expressly stated as far as the Court can tell.  The redacted communications at issue appear to be attached to the Hornback Defendants' response as Exhibit F (DN 216-6).

D.    **Relevant Correspondence between Counsel**

4

On April 27, 2016, counsel for Plaintiffs wrote a letter to counsel for the Hornback Defendants (DN 210-5).  In that letter, counsel for Plaintiffs (1) reminded counsel for the Hornback Defendants about the impending deadline for responses to the Lifetime requests; (2) took issue with the Hornback Defendants' April 7, 2016 production of individual tax returns for 2012-2014, noting that they had requested tax returns dating back to 2000; and (3) took issue with redactions of portions of communications between Hornback and Terry.  (DN 210-5, p. 2.)

On May 31, 2016, counsel for Plaintiffs wrote another letter to counsel for the Hornback Defendants, noting that the Hornback Defendants had not responded to the Lifetime Requests and warning that in order "[t]o avoid [c]ourt intervention, by close of business tomorrow, please let us know the Hornback Defendants' position on each of the issues raised in the April 27, 2016 letter, and confirm in writing that the [Hornback Defendants] will comply fully with the [Lifetime Requests] by no later than the end of this week."  (DN 210-6.)

On the same day, counsel for the Hornback Defendants counsel responded, stating that due to ongoing personal health complications of counsel, counsel would "do my best" to respond "by the end of the next week."  (DN 221-1 [May 31, 2016 email].)

On June 10, 2016, counsel for the Hornback Defendants sent a letter to counsel for Plaintiffs.  (DN 210-12.)  In that letter, counsel for the Hornback Defendants stated, among other things, that they would not be producing tax returns before 2007 unless counsel for Plaintiffs could demonstrate why they were needed, and the "redacted portions are either work product or privileged"; the letter did not mention the Lifetime Requests.  (*Id*.)

On June 15, 2016, counsel for the Hornback Defendants counsel emailed counsel for Plaintiffs, stating, "Because of [co-counsel's] hospital stay and some personal issues, I would appreciate a two week extension on both discovery and the pending response.  Among other

things, unfortunately[] I have not had opportunity to sufficiently communicate with my client."
(DN 216-1.)  On the same day, counsel for Plaintiffs responded, refusing to accommodate any
more time extensions, asking for clarification on the "personal issues," and requesting that the
Hornback Defendants make clear if their intentions were to "object and/or respond with anything
less than full compliance . . . " with Plaintiffs' requests.  (DN 216-2.)  Counsel for the Hornback
Defendants replied same day, chastising Plaintiffs' counsel for asking questions about the
personal and health issues.  (DN 216-3.)

The next day, June 16, 2016, Plaintiffs contacted the undersigned and requested a status
conference to discuss the Hornback Defendants' "failure to comply with the Lifetime Requests,"
among other things, and notified counsel for the Hornback Defendants of the date of the status
conference.  (DN 216-4, DN 221, p. 4.)   As stated above, as a result of the conference, the
undersigned set a July 1, 2016 deadline for filing a motion to compel, and the Plaintiffs did so.

## II.    DISCUSSION

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, "a party may move for an
order compelling disclosure or discovery," provided that the party certifies to the court that it
has, in good faith, conferred or attempted to confer with the person or party failing to make
disclosure or discovery in an effort to obtain it without court action.  Fed. R. Civ. P. 37(a)(1).

### A.    Responses to the Lifetime Requests

Motions to compel discovery responses are authorized where a party fails to provide
proper responses to requests for production of documents under Rule 34.  Fed. R. Civ. P.
37(a)(3)(B)(iv).  "[A]n evasive or incomplete disclosure, answer, or response must be treated as
a failure to disclose, answer or respond."  Fed. R. Civ. P. 37(a)(4).  "The burden . . . rests with
the party objecting to the motion to compel to show in what respects the discovery requests are

improper." *Kafele v. Javitch, Block, Eisen & Rathborne*, No. 2:03cv00638, 2005 WL 5095186, at 1 (S.D. Ohio April 20, 2005).

Plaintiffs state that, although the Hornback Defendants have produced documents in response to the Lifetime Requests, they have never filed a written response in accordance with Rule 34(b) of the Federal Rules of Civil Procedure; consequently, Plaintiffs argue that they do not know whether the production is complete, whether documents are being withheld, or whether the Hornback Defendants are standing behind any objections.  Therefore, Plaintiffs request the Court issue an order holding that the Hornback Defendants have waived any objections to the Lifetime Requests and compelling full complaince with Rule 34(b).

It is unclear to the Court whether Plaintiffs seek an order holding that the Hornback Defendants have waived objections to the Lifetime Requests *or* the Amended First Set of Requests *in toto*.   Nonetheless, the Hornback Defendants have offered no evidence that they have provided written responses to the Amended First Set of Requests, *or* the Lifetime Requests contained therein, in compliance with Rule 34(b).

The Court is not impressed with the ostensible failure of the Hornback Defendants to comply with Rule 34(b).  However, it finds that it would be unjust at this juncture to find that the Hornback Defendants have waived all objections, especially in light of the shortcomings and ambiguities in the Motion to Compel.  *That being said, the Court will not tolerate any future failure to comply with the basic tenets of the Federal Rules of Civil Procedure*.

Thus, the Court will grant, in part, the Motion to Compel regarding the Rule 34(b) responses and require the Hornback Defendants to serve responses to the Amended First Set of Requests within fourteen (14) days of the entry of this order.  *Failure of the Hornback*

7

*Defendants to comply with Rule 34(b) will result in a waiver of objections to the Amended First Set of Requests.*

### B.      Tax Returns from 2000-2006

Plaintiffs seek tax returns for the Hornback Defendants for 2000-2006.[3]  Rule 26(b) of the Federal Rules of Civil Procedure allows a party to obtain any "nonprivileged matter that is relevant to any party's claim or defense . . . ."  Fed. R. Civ. P. 26(b)(1).  The discovery "need not be admissible evidence to be discoverable." *Id*.  This language is broadly construed to include "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted).  However, the scope of discovery has limits.  "On motion or on its own, the court must limit the frequency or extent of discovery . . . if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."  Fed. R. Civ. P. 26(b)(2)(C)(iii).  Determining the "scope of discovery is within the sound discretion of the trial court."  *Winchester v. City of Hopkinsville*, No. 5:13-CV-220-TBR, 2014 WL 7005422, at 1 (W.D. Ky. Dec. 10, 2014) (*citing Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981)).

It is well-settled in the Sixth Circuit that tax returns are not privileged from disclosure. *DeMarco v. C & L Masonry, Inc.*, 891 F.2d 1236 (6th Cir.1989); *see also Credit Life Ins. Co. v.*

---

[3] In the brief supporting the Motion to Compel, Plaintiffs state that the Hornback Defendants failed to produce tax returns for 2000-2012.  (DN 210-1, p. 8.)  In their response, the Hornback Defendants point out this misstatement by Plaintiffs, stating that that the tax returns for 2007-2012 had been produced by the Hornback Defendants' former counsel.  (DN 216, p. 3.)  In their reply supporting the Motion to Compel, Plaintiffs acknowledge that they are in possession of the 2007-2012 tax returns.  Therefore, the only tax returns at issue are from 2000-2006.

*Uniworld Ins. Co.*, 94 F.R.D. 113 (S.D. Ohio 1982).  Some courts, in recognition of the sensitive nature of the information contained within tax returns, have adopted a qualified privilege or stricter relevancy standard.  *See, e.g., Terwilliger v. York International Corp.*, 176 F.R.D. 214 (W.D. Va. 1997).  This standard applies a two-pronged test which analyzes whether the returns are relevant to the issues raised and, if so, whether that information is not otherwise available. *Id.*  Some district courts within the Sixth Circuit have endorsed this two-part test for determining when discovery of a party's tax returns is permissible.  *See, e.g., Smith v. Mpire Holdings, LLC*, 2010 WL 711797 (M.D. Tenn. Feb. 22, 2010*); BM Investments v. Hamilton Family, L.P.*, 2008 WL 1995101 (E.D. Mich. May 6, 2008).  Meanwhile, other district courts have held that the appropriate analysis simply "is whether the tax returns are relevant to the claim or defense of any party.  Fed. R. Civ. P. 26(b)(1)."  *Westbrook v. Charlie Sciara & Son Produce Co., Inc.*, 2008 WL 839745, at 3 (W.D.Tenn. March 27, 2008*); see also Kumar v. Hilton Hotels Corp.*, 2009 WL 3681837 (W.D. Tenn. Oct.30, 2009*); LaPorte v. B.L. Harbert International, LLC*, 2010 WL 4323077 (W.D. Ky. Oct.26, 2010).  The Sixth Circuit has *not* adopted the two-part test or a heightened relevancy standard.

With respect to the issue of relevancy, courts typically find tax returns to be relevant in actions in which a party's income is in issue.  *See, e.g., Bricker v. R & A Pizza, Inc.*, No. 2:10-CV-278, 2011 WL 1990558, at 3 (S.D. Ohio May 23, 2011*);  Reed v. Tokio Marine and Nichido Fire Ins. Co. Ltd.*, 2010 WL 420921 (W.D. La. Feb.1, 2010); *Glenford Yellow Robe v. Allender*, 2010 WL 1780266 (D.S.D. April 30, 2010); *Twilley v. International Bedding Corp.*, 2009 WL 2970407 (N.D. Ind. Sept.10, 2009); *Burns v. St. Clair Housing Authority*, 2008 WL 4837614 (S.D. Ill. Nov. 6, 2008).  A major factor in this case concerns Hornback's non-compete agreement with Polylok, Inc. which ran from 2007 to 2012.  (DN 204-2, p. 3.)  Plaintiffs argue

that the tax returns for Hornback from period before the non-compete agreement are relevant to assess changes to his income and to explore and determine the extent of his breach of the non-compete agreement.  With respect to the remainder of the Hornback Defendants, Plaintiffs argue that the tax returns are "relevant to assessing the extent of [Michael] Hornback's breach of contract and the Hornback Defendants' infringement of the patent-in-suit and unjust enrichment." (DN 210-1, p. 8-9.)

The Court finds that the information contained in the tax returns for years 2000-2006 is relevant to Plaintiffs' claims.  The Hornback Defendants' income has been put in issue, thereby making the information contained in the tax returns relevant.  Additionally, Plaintiffs assert that the tax returns are relevant to provide them a clear picture of any entities related to the Hornback Defendants.  (DN 210-1, p. 9.)  This is due to the fact that, according to Plaintiffs, they learned, from the other tax returns received from the Hornback Defendants, of other entities unknown to the Plaintiffs at that time.  *Id.*  The Hornback Defendants offer no argument other than their belief that the tax returns are not relevant to the action and, in particular, the infringement claims.  In light of this, the Court agrees that the information contained in these tax returns may lead to the discovery of admissible evidence relating to Plaintiffs' claims and, therefore, is relevant.  The Court also finds that the burden associated with producing one's own tax returns is likely to be slight.  Thus, the Court will grant the Plaintiffs' Motion to Compel production of the Hornback Defendants' tax returns for the years 2000-2006.

### C.    Redacted Communications

Plaintiffs argue that, to the extent the Hornback Defendants wanted to lodge a privilege objection, they were required to produce a privilege log as required by Rule 26(b)(5).  Plaintiffs also appear to question whether the redacted portions of the communications are actually subject

to a privilege.  The Hornback Defendants argue that, because the communications were between defendant Bear Onsite's owner, Theo Terry, and Hornback, they were subject to a "'joint defense' or common interest rule"; the Hornback Defendants also argue that the information provided on the redacted communications themselves substantially fulfill all the requisite information required by a privilege log.  (DN 216, pp. 4-6.)

Rule 26(b)(5) states that "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or … things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5).  Therefore, the objecting party must be specific enough in its objections to support its privilege, but not too specific so as to divulge privileged information.

Many courts have held that the failure to provide a privilege log within the applicable time constitutes a waiver.  *See Duracore Pty Ltd. v. Applied Concrete Tech., Inc*, 2015 WL 4750936, at 6 (W.D. Ky. Aug. 11, 2015) (defendant waived objections by failing to make them until responding to Plaintiff's motion); *see also Greene v. Cracker Barrel Old Country Store, Inc.*, 2009 WL 1885641, at 2 (W.D. Tenn. July 1, 2009) (regarding both interrogatories and requests to produce);  *Gonzalez v. Ohio Cas. Ins. Co.*, 2008 WL 795757, at 1 (E.D. Mich. Mar. 25, 2008) (regarding both interrogatories and requests to produce).  However, some courts have expressly "rejected a *per se* waiver rule that deems a privilege waived if a privilege log is not produced."  *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1148 (9th Cir. 2005).  Indeed, in light of "the harshness of a waiver sanction," many courts

11

"have reserved the sanction for those cases where the offending party committed unjustified delay in responding to discovery." *Berryman v. SuperValu Holdings, Inc.*, 2008 WL 4934007, at 10 (S.D. Ohio Nov. 18, 2008); *see also Ritacca v. Abbott Labs.*, 203 F.R.D. 332, 335 (N.D. Ill. 2001). Additionally, "[m]inor procedural violations, good faith attempts at compliance, and other such mitigating circumstances militate against finding waiver." *Ritacca*, 203 F.R.D. at 335.

Although the Sixth Circuit has not yet provided definitive guidance on this subject, other courts in this circuit, and elsewhere, have set out the following elements to be identified in a privilege log:

(a) The author(s) and all recipients (designated so as to be clear who is the sender and who the receiver), along with their capacities/roles/positions;

(b) The document's date;

(c) The purpose and subject matter of the document; and

(d) The nature of the privileged asserted, and why the particular document is believed to be privileged.

*Mafcote, Inc. v. Fed. Ins. Co.*, 2010 WL 1929900, at 6 (W.D. Ky. May 12, 2010); *see alsoBrubaker v. Encompass Prop. & Cas. Co.*, 2008 U.S. Dist. LEXIS 40133, at 2 (E.D. Mich. May 19, 2008); *Jones v. Hamilton County Sheriff's Dep't*, 2003 WL 21383332 (S.D. Ind. June 12, 2003); *Allen v. Chicago Transit Auth.*, 198 F.R.D. 495, 498 n. 1 (N.D. Ill. 2001); *Allendale Mut. Ins. Co. v. Bull Data Sys.*, 145 F.R.D. 84, 88 (N.D. Ill. 1992); *Smith v. Logansport Cmty. Sch. Corp.*, 139 F.R.D. 637, 648–49 (N.D. Ind. 1991).

Here, the text message documents identify the dates of the messages, along with the one of the participants in the conversation. However, they fail to provide the name of the other

participant, the purpose and subject matter of the document, the nature of the privilege asserted, and why the Hornback Defendants believe that communications to be privileged.  When Plaintiffs' counsel contacted the Hornback Defendants' counsel to demand production of the unredacted text messages or objections to production of the unredacted versions, the Hornback Defendants' counsel failed to respond until over forty days later.  Furthermore, that response was lacked any specificity, only stating that "I believe that the redacted portions are either work product or privileged.  My understanding is that there is a joint defense agreement in effect." (DN 210-2, p.2).  Moreover, the Hornback Defendants have not denied that they were required to supply a privilege log under the Federal Rules of Civil Procedure.  *See JLJ Inc. v. Santa's Best Craft, LLC*, No. 3:02-CV513 (S.D. Ohio May 28, 2004) (the court specifically noted the importance of the fact that the non-compliant defendants "did not deny that they were required to provide the privilege log").

In sum, the Hornback Defendants refusal to provide a privilege log under these circumstances is inexcusable.  Consequently, the waiver of the privilege is most certainly an option for the Court to consider.  Nonetheless, the Court will give the Hornback Defendants one last opportunity to comply with Rule 26 and produce a privilege log within fourteen (14) days of this order.  *Anything less than full compliance by the Hornback Defendants will result in waiver of any privilege*.

Finally, the Court notes that the Hornback Defendants characterize the principles of the "common-interest rule" and "joint-defense agreement" as interchangeable, and refer to both principles numerous times throughout their response.  (DN 216, pp. 4-6.)  In fact, courts within the Sixth Circuit have characterized these privileges separately.  *See, e.g.  Ford Motor Co. v.*

13

*Michigan Consol. Gas Co.*, 2013 WL 5435184 (E.D. Mich. Sept. 27, 2013); *Libbey Glass, Inc. v. Oneida, Ltd.*, 197 F.R.D. 342 (N.D. Ohio 1999).

The common-interest rule applies "where the parties are represented by *separate attorneys* but share a common legal interest." *Ford Motor Co.* at 5 (quoting *State Farm Mut. Auto. Ins. Co. v. Hawkins*, 2010 WL 2287454, at 8 (E.D. Mich. June 04, 2010)). Here, the parties to the text messages were represented by the same attorney. Therefore, the common-interest rule does not apply in this matter.

On the other hand, the "joint-defense" doctrine is potentially applicable in the context of this matter. A "joint-defense" agreement, also called the co-client privilege, allows communications between one client (*e.g.*, a defendant) and his attorney to be shared with a co-defendant without waiving the privilege where both are represented by the same attorney." *Ford Motor Co.* at 5 (quoting *Hawkins* at 8 (Cleland, J.) (emphasis added) (citing 24 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 5493 n.91; Restatement (Third) of the Law Governing Lawyers § 75)). The doctrine is "an extension of the attorney-client privilege [that applies] to confidential communications shared between co-defendants which are part of an ongoing and joint effort to set up a common defense strategy." *United States v. Moss*, 9 F.3d 543, 550 (6th Cir.1993). "Communications between two parties are not protected by the joint-defense doctrine merely because the parties are attempting to formulate a common defense strategy. As an extension of the attorney-client privilege, for the doctrine to apply, the shared communications must already be protected by the attorney-client privilege." *Ford Motor Co.* at 5. The burden to establish the applicability of the privilege is upon the defendants. *Moss*, 9 F.3d at 550.

14

The Hornback Defendants appear to argue that because a joint-defense agreement was in effect, the redacted portions of the text messages are privileged. The Court disagrees. The Hornback Defendants cite *Broessel v. Triad Guar. Ins. Corp.*, which held that a joint-defense agreement is not discoverable because it is not relevant to the claim or defense of any party. 238 F.R.D. 215, 218 (W.D. Ky. 2006). However, the Hornback Defendants' argument mischaracterizes the ruling in *Broessel*. In that case, the issue was whether or not the joint-defense agreement *itself* was discoverable. The discovery of documents containing information which might have been protected by the joint-defense agreement was not at issue in *Broessel*, rendering that case irrelevant to the issue at hand.

The main thrust of the Hornback Defendants' argument is that the two parties to the communication are commonly represented, that the Plaintiffs knew that the parties were commonly represented, and that statements made regarding this action between Terry and Hornback would be privileged. The Hornback Defendants believe that with these facts, "[there] simply could be no other way." (DN 216, p .6.) It is true that communications between Hornback and Terry *may* be privileged if those communications were in furtherance of a common joint defense strategy. It is also true that joint-defense agreements may be oral. However, the Hornback Defendants forget that they have the burden to establish the applicability of the privilege. *See Moss,* 9 F.3d at 550. The Hornback Defendants, by merely claiming that an oral joint defense agreement was in effect and stating that Plaintiffs knew of the single representation between the co-parties, have not made a sufficient argument to show that the redacted portions of the text messages were privileged. Furthermore, the unredacted portions of the text messages strongly suggest that the communications were not in furtherance of a common defense strategy. Therefore, the Court rejects the Hornback Defendants' assertion that counsel's

"statement that she believed there was a joint defense agreement should have been more than sufficient" to satisfy the obligation to produce a privilege log. (DN 216, p. 6.)

### D.      Sanctions

Plaintiffs have requested sanctions in the form of payment of reasonable expenses and attorneys' fees incurred in making its Motion to Compel pursuant to Federal Rule of Civil Procedure 37(a)(5)(A).  Rule 37(a)(5) states, "If the motion [to compel] is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Fed. R. Civ. P. 37(a)(5). Nonetheless, payment of reasonable expenses is not warranted where "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust."  (*Id.*)

The Court is granting, in part, Plaintiffs' Motion to Compel.  Furthermore, the Court is greatly concerned with the correspondence demonstrating the lengths to which Plaintiffs had to go to obtain responses to the Amended First Set of Requests and/or Lifetime Requests.  The Hornback Defendants have presented no sufficient justification for the *continued* delay in responding.  Furthermore, the timing of the production of documents by the Hornback Defendants in response to the Lifetime Requests is worrisome.  Finally, there is no evidence that the Hornback Defendants have produced a privilege log with respect to the redacted communications pursuant to their obligation under Rule 26.  Nonetheless, as pointed out above,

16

there are significant issues with the Motion to Compel.  Therefore, the Court concludes that attorneys' fees would be unjust *at this juncture*.

## III.    CONCLUSION

Accordingly,

IT IS ORDERED that the Motion to Compel (DN 210) is GRANTED IN PART and DENIED IN PART.

The Motion to Compel is GRANTED with respect to the following:

- The Hornback Defendants are ORDERED to serve responses to the Amended First Set of Requests pursuant to Rule 34(b) of the Federal Rules of Civil Procedure within **fourteen (14) days** of the entry of this order.  Failure of the Hornback Defendants to comply with Rule 34(b) will result in a waiver of objections to the Amended First Set of Requests.

- The Hornback Defendants are ORDERED to produce their tax returns for the years 2000-2006 within **fourteen (14) days** of the entry of this order.

- The Hornback Defendants are ORDERED to produce a privilege log with respect to the redacted communications within **fourteen (14) days** of this order.  Anything less than full compliance by the Hornback Defendants will result in waiver of any privilege.

The Motion to Compel is DENIED insofar as it requests a waiver of objections to the Amended First Set of Requests and sanctions.